UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DARLA VAN NESS,

               Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

               Defendant.

CASE NO. 12-cv-05967 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos. 14, 19, 20).

The ALJ's failure to provide specific and legitimate reasons for rejecting the opinions of two treating doctors requires a reversal of this case for further consideration.

1

## BACKGROUND

2

3 Plaintiff, DARLA VAN NESS, was born in August, 1958 and was 45 years old on

the alleged date of disability onset of October 23, 2003 (*see* Tr. 175). Plaintiff worked for

4 the Health Department as a senior office assistant from 1989 until 2003 (Tr. 42).  She was

5 in an auto accident in 1995, but returned to work (Tr. 58-59).  In February, 2003, she was

6 in another auto accident and returned to work part-time (Tr. 60).  Plaintiff resigned in

7 2005, following more surgeries and time off work, when she was given the choice of

8 resigning or being fired because she could not keep a regular schedule (Tr. 61).

9 Plaintiff has at least the severe impairments of "degenerative disc disease

10 (thoracic, cervical, and lumbar spine), status post rotator cuff repair, left shoulder

11 tendinitis and chronic pain syndrome (20 CFR 404.1520(c))" (*see* Tr. 19).

12

13 ## PROCEDURAL HISTORY

14 Plaintiff filed an application for disability insurance ("DIB") benefits pursuant to

15 42 U.S.C. § 423 (Title II) of the Social Security Act (*see* Tr. 175-76). The application

16 was denied initially and following reconsideration (Tr. 79-83, 89-93). Plaintiff's

17 requested hearing was held before Administrative Law Judge Laura Valente ("the ALJ")

18 on June 20, 2011 (*see* Tr. 33-67).  A supplemental hearing was held on October 4, 2011

19 (*see* Tr. 68-78).  On October 28, 2011, the ALJ issued a written decision in which the

20 ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see*

21 Tr.14-32).

22

23 On October 1, 2012, the Appeals Council denied plaintiff's request for review,

24 making the written decision by the ALJ the final agency decision subject to judicial

review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court

seeking judicial review of the ALJ's written decision in November, 2012 (*see* ECF No.

3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on

January 23, 2013 (*see* ECF Nos. 11, 12).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) whether or

not the ALJ provided legitimate reasons for rejecting the opinions of treating physicians

Dr. Newell-Eggert and Dr. Kershisnik; (2) whether or not the ALJ was required to

address the medical opinion of treating pain specialist, Dr. Meagher; (3) whether or not

the ALJ erred in her Step 2 finding that Ms. VanNess' migraine headaches, hand

impairments, and mental impairments were non-severe; (4) whether or not the ALJ was

required to consider the side effects of Ms. VanNess' prescribed medication; (5) whether

or not the ALJ's reasons for finding Ms. VanNess not credible were legitimate; (6)

whether or not the ALJ erred in relying on the testimony of Dr. Lorber; and (7) whether

or not this Court should exercise its authority to remand the case for immediate payment

of benefits, rather than further administrative proceedings (*see* ECF No. 14, pp. 2-3).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social

Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

the fifth and final step of the sequential disability evaluation process. *See Bowen v.*

*Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to

engage in any substantial gainful activity" due to a physical or mental impairment "which

can be expected to result in death or which has lasted, or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v.*

1    *Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases));

2    *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d

3    530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of

4    administrative law require us to review the ALJ's decision based on the reasoning and

5    actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit

6    what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219,

7    1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other

8    citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we

9    may not uphold an agency's decision on a ground not actually relied on by the agency")

10    (*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals,

11    legal errors committed by the ALJ may be considered harmless where the error is

12    irrelevant to the ultimate disability conclusion when considering the record as a whole.

13    *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*,

14    556 U.S. 396, 407 (2009).

15

16                               <u>DISCUSSION</u>

17    **(1)      Whether or not the ALJ provided legitimate reasons for rejecting the**

18                  **opinions of treating physicians Dr. Newell-Eggert and Dr. Kershisnik.**

19         Dr. Margo K. Newell-Eggert, M.D., is a physical medical and rehabilitation doctor

20    who first saw plaintiff in 1995, and who treated plaintiff from March of 2003 (Tr. 335-

21    37) until at least May of 2006 – over three years (Tr. 280).  Dr. Erin Kershisnik, M.D.

22    also saw plaintiff for over two years and appears to be her general physician (*see* Tr. 388-

23    445).  Both physicians concluded during the course of their ongoing treatment that

24

plaintiff was unable to carry out the responsibilities of full time employment, largely due to her chronic pain and medication side effects, in addition to depression (*see, e.g.,* Tr. 284-85, 291, 321-22 and 388). For example, Dr. Kershisnik indicated that plaintiff's "chronic pain and medication side effects frequently impair her from even coming in for her medical appointments[, as] she is frequently rescheduling due to pain" (Tr. 388). Dr. Kershisnik added that plaintiff "is complaint with all recommended therapies and takes an active role in her health as evidence by her very rapid return to normal blood sugars after diabetes education and medication" (*id.*).

The ALJ gave "little weight" to both of these opinions (Tr. 24-25). As to Dr. Newell-Eggert, the ALJ concluded ". . . the objective medical evidence of records including physical exam findings support mostly moderate limitations. In addition, treatment notes show that the claimant's symptoms improved" (Tr. 24). As to Dr. Kershisnik, the ALJ concluded "Dr. Kershisnik's opinion is outside the period at issue. In addition, he cites no objective evidence of physical exam findings to support his opinion" (Tr. 25). This constitutes the totality of the discussion regarding her reason for discounting opinions from both of these treating physicians.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,

603 (9th Cir. 1999)).   If the medical evidence in the record is not conclusive, sole

responsibility for resolving conflicting testimony and questions of credibility lies with the

ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*quoting Waters v.*

*Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145,

150 (9th Cir. 1980))).

It is not the job of the court to reweigh the evidence: If the evidence "is susceptible

to more than one rational interpretation," including one that supports the decision of the

Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*,

278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan, supra,* 169 F.3d at 599, 601.   The

ALJ may "draw inferences logically flowing from the evidence."  *Sample, supra*, 694

F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*,

509 F. Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-

8, 1986 SSR LEXIS 15 at *22.

"A treating physician's medical opinion as to the nature and severity of an

individual's impairment must be given controlling weight if that opinion is well-

supported and not inconsistent with the other substantial evidence in the case record."

*Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at

*14 (9th Cir. 2001) (*citing SSR 96-2p, 1996 SSR LEXIS 9*); *see also Smolen v. Chater*,

80 F.3d 1273, 1285 (9th Cir. 1996). When the decision is unfavorable, it must "contain

specific reasons for the weight given to the treating source's medical opinion, supported

by the evidence in the case record, and must be sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the [] opinion and the reasons for

that weight." SSR 96-2p, 1996 SSR LEXIS 9 at *11-*12. However, "'[t]he ALJ may

disregard the treating physician's opinion whether or not that opinion is contradicted.'"

*Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir.

2004) (*quoting Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). In addition,

"[a] physician's opinion of disability 'premised to a large extent upon the claimant's own

accounts of his symptoms and limitations' may be disregarded where those complaints

have been" discounted properly. *Morgan, supra,* 169 F.3d at 602 (*quoting Fair v. Bowen*,

885 F.2d 597, 605 (9th Cir. 1989) (*citing Brawner v. Sec. HHS*, 839 F.2d 432, 433-34

(9th Cir. 1988))). However, like all findings by the ALJ, a finding that a doctor's opinion

is based largely on a claimant's own accounts of her symptoms and limitations must be

based on substantial evidence in the record as a whole. *See Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

1999)).

　　　　The ALJ must provide "clear and convincing" reasons for rejecting the

uncontradicted opinion of either a treating or examining physician or psychologist.

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d

418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a

treating or examining physician's opinion is contradicted, that opinion can be rejected

only "for specific and legitimate reasons that are supported by substantial evidence in the

record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043

(9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can

accomplish this by "setting out a detailed and thorough summary of the facts and

conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). But, the Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

Here, the ALJ's conclusion that "the objective medical evidence of record including physical exam findings supports mostly moderate limitations" is substituting her own interpretation of the medical findings, rather than those of the doctors.  Most of the extensive findings that occurred over a two and one-half year period for these physicians were rejected without explanation.  Additionally, these broad statements do not satisfy the ALJ's obligation of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Instead of accepting the treating physicians' opinions, the ALJ relied on the testimony of a non-examining medical expert at plaintiff's hearing – Dr. Arthur Lorber (Tr. 39) who concluded that plaintiff had the residual functional capacity to sit, stand and

walk for 6 hours, should avoid overhead work and should not grip using her right hand (Tr. 49).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d).  A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v.Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes, supra*, 881 F.2d at 752).

"In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831).

In this case, the ALJ provided little explanation regarding why she accepted the opinion of a non-examining medical advisor who had never seen plaintiff over opinions provided by two treating physicians who had seen plaintiff for over two years.  The ALJ did not set forth specific, legitimate reasons that were supported by substantial evidence in the record.

In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). But, the Commissioner "may not reject 'significant

probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

In this case, defendant, in the responsive brief, provided several *post hoc* explanations as to why the treating physicians' opinions were rejected including that the doctors offered "legal conclusions reserved to the commissioner" (ECF No. 19, p. 13); that Dr. Newell-Eggert's opinion was consistent with the ALJ's RFC (*id*. at p. 13); and that if plaintiff was able to cope with her chronic pain, one of her doctor's concluded that she then would be suited to "sedentary light work" (*id.*). None of these explanations was provided by the ALJ.  It is the ALJ that must provide specific and legitimate reasons for this Court to evaluate.  This Court's ruling must be based on the reasons provided by the ALJ – which, as noted, were sparse and nonspecific.  Therefore, these *post hoc* explanations can be rejected properly for that reason alone.

Additionally, however, with regard to defendant's argument that the doctors offered so called "legal conclusions" which should be ignored by the ALJ, the Court notes that these opinions regarding plaintiff's ability to work were buttressed by a number of observations and considerations that were within their area of expertise and which should have been evaluated by the ALJ explicitly.

For instance, in July of 2004, when Dr. Newell-Eggert concluded that plaintiff should remain off work, she also noted plaintiff's continuing treatment with a pain specialist, sacral-illiac joint injections, muscle spasms in the lower back, medications

including Prozac 40 and Paxil, and ongoing flare-ups in pain, that would cause her to miss significant work (*see* Tr. 290-91).  These observations are consistent with the conclusion and do not constitute a legal opinion.  These observations were not addressed by the ALJ, nor discussed in any detail when the ALJ discounted the opinions.

As noted in the case of *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012), a treating physician's conclusion that his patient was "unlikely" to return to fulltime work is not a conclusory statement if it is an assessment based on objective medical evidence and failure to consider that opinion is not harmless error (*id.*).

Finally, the ALJ's conclusion that she would give little weight to Dr. Kershisnik's opinion because it was "outside of the period at issue" is not a specific and legitimate reason in this context.  Regarding the timing of the doctor's evaluation, the Ninth Circuit specifically has "held that 'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'" *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996) (*quoting Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)) (footnote omitted); *cf. Taylor v. Comm'r SSA*, 659 F.3d 1228, 1232 (9th Cir. 2011) ("if the Appeals Council rejected Dr. Thompson's opinion because it believed it to concern a time after Taylor's insurance expired, its rejection was improper").

Dr. Kershisnik's opinion was based on over two years of treatment and was rendered just over two months after plaintiff's period of disability.  The one sentence dismissal of this opinion because it was outside the period of eligibility, without further explanation, is legal error.  Nor is this error harmless, because had the ALJ not discounted this treating physician's opinion, her evaluation of plaintiff's disability would

likely have been much different. *See Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).

      **(2)**      **Whether or not the ALJ was required to address the medical opinion of Dr. Christopher Meagher, Ph.D., -- plaintiff's treating pain specialist.**

One of the diagnoses that was made by a number of plaintiff's treating physicians is that plaintiff suffered from chronic pain syndrome. She was treated by psychologist Dr. Christopher Meagher, Ph.D., who concluded that even after treatment "the prospect of returning to her previous level of productivity is neither probable nor prudent" (Tr. 246). Defendant acknowledges that the ALJ did not discuss this opinion, nor the other observations that Dr. Meagher made when summarizing his treatment and evaluation (ECF No. 19, p. 16). Defendant also acknowledges that the ALJ is required to consider relevant medical opinions and should explicitly reject or credit a relevant medical opinion, (ECF No. 19, p. 16 (*citing* 20 CFR §404.1527(b); *Nguyen v. Chatter,* 100 F.3d 1462, 1464 (9th Cir. 1996)). In essence, defendant argues that the ALJ's failure to discuss this opinion was harmless error because the ALJ found that plaintiff could perform other work (*id.*).

When the ALJ's decision is unfavorable, the decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion and the reasons for that weight." SSR 96-2p, 1996 SSR LEXIS 9 at *11-*12. Therefore, the ALJ committed

legal error by not evaluating Dr. Meagher's opinions and assigning a specific amount of weight to them.

Furthermore, this error is not harmless. The ALJ concluded that plaintiff was capable of returning to her past relevant work as an office clerk (Tr. 25). Dr. Meagher concluded that the prospect of her returning to her "previous level of productivity" at this job was "neither probable nor prudent" (Tr. 246). Therefore, contrary to defendant's argument, since the treating doctor's conclusion is directly contrary to the ALJ's conclusion regarding her ability to perform her past relevant work, this error is not harmless.

(3)     **Whether or not the ALJ erred in her Step 2 finding that plaintiff's migraine headaches and depression were non-severe.**

It is noted that the ALJ did not limit plaintiff's RFC or jobs for any problems related to migraine headaches. Furthermore, at Step 2, the ALJ did not list migraine headaches as a severe impairment. Interestingly, nowhere in the record does any treating, examining or reviewing physician deny that the plaintiff has migraine headaches. Her treating physicians have documented this condition (*see, e.g.,* Tr. 295, 299, 313, 321, 313, 388, 423). She also consistently was diagnosed with depression (*see, e.g.,* Tr. 284).

Step-two of the administration's evaluation process requires the ALJ to determine if the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater,* 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The Administrative Law Judge "must consider the combined effect of all of the claimant's impairments on her ability to

1    function, without regard to whether [or not] each alone was sufficiently severe." *Smolen,*

2    *supra*, 80 F.3d at 1290 (citations omitted).  The step-two determination of whether or not

3    a disability is severe is merely a threshold determination, raising potentially only a

4    "prima facie case of a disability."  *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007)

5    (*citing Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999)).

6         An impairment is "not severe" if it does not "significantly limit" the ability to

7    conduct basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work

8    activities are "abilities and aptitudes necessary to do most jobs," including, for example,

9    "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;

10   capacities for seeing, hearing and speaking; understanding, carrying out, and

11   remembering simple instructions; use of judgment; responding appropriately to

12   supervision, co-workers and usual work situations; and dealing with changes in a routine

13   work setting."  20 C.F.R. § 404.1521(b).  "An impairment or combination of impairments

14   can be found 'not severe' only if the evidence establishes a slight abnormality that has

15   'no more than a minimal effect on an individual[']s ability to work.'"  *Smolen, supra*, 80

16   F.3d at 1290 (*quoting* Social Security Ruling "SSR" 85-28) (*citing Yuckert v. Bowen*, 841

17   F.2d 303, 306 (9th Cir. 1988)). The step-two analysis is "a *de minimis* screening device to

18   dispose of groundless claims," when the disability evaluation process ends at step two.

19   *Smolen, supra,* 80 F.3d at 1290 (*citing Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).

20        According to Social Security Ruling 96-3b, "[a] determination that an individual's

21   impairment(s) is not severe requires a careful evaluation of the medical findings that

22   describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-

23

24

related symptoms), and an informed judgment about the limitations and restrictions the

impairments(s) and related symptom(s) impose on the individual's physical and mental

ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR

96-7p). If a claimant's impairments are "not severe enough to limit significantly the

claimant's ability to perform most jobs, by definition the impairment does not prevent the

claimant from engaging in any substantial gainful activity." *Bowen, supra*, 482 U.S. at

146. Regarding the establishment of a disability, it is the claimant's burden to "'furnish[]

such medical and other evidence of the existence thereof as the Secretary may require.'"

*Bowen, supra*, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing Mathews v.

Eldridge*, 424 U.S. 319, 336 (1976)) (footnote omitted).

   In this case, the ALJ acknowledged that plaintiff's treating physicians reported

headaches and that the claimant reported headaches and migraine (Tr. 20). The ALJ

concluded that her problems with headaches were "controlled with medications and other

treatments" (*id.*).  This is the ALJ's own interpretation of the records and not the

evaluation by a treating or examining physician.  Again, the ALJ must explain why her

own interpretations, rather than those of the doctors, are correct. *Reddick*, *supra*, 157

F.3d at 725.  Here, the ALJ has failed to do so.  The ALJ's conclusion that plaintiff's

headaches were controlled through medication is not supported with citations to the

record.  For example, the ALJ noted a report by Dr. Newell-Eggert (Tr. 20 (*citing* Tr.

307, 286)).  In that report, from March of 2004, Dr. Newell-Eggert noted that plaintiff

received chiropractic adjustments and message treatments to help her with the headaches,

but that "the next day she can feel a bit beat up" (Tr. 307).   And, the doctor furthermore

1   noted that she continues to feel pain "up to 8/10" (*id.*).  She continues on Percocet to treat

2   these migraines (*id.*), and of note, this is the report where Dr. Newell-Eggert concludes

3   that plaintiff will "[c]ontinue to be off work" (Tr. 309).  Similarly, the ALJ cited Dr.

4   Kershisnik's records broadly for the proposition that plaintiff headaches were "controlled

5   through medication" (Tr. 26 (*citing* "Exhibit 6F", *i.e.*, Tr. 388-445).  This Court's

6   independent review of these extensive records has not resulted in any such statement by

7   Dr. Kershisnik.  To the contrary, Dr. Kershnis noted in April of 2007, that "[s]he has 2-3

8   migraines a week but this is her usual frequency." (Tr. 423).  This hardly appears to be a

9   conclusion that plaintiff's condition is controlled through medication.  Since there was no

10  provision in the ALJ's RFC for plaintiff's ongoing migraine headaches, this error was not

11  harmless as it affected the ultimate nondisability determination.

12  Also, the ALJ's conclusion that her depression should not be included as a severe

13  impairment does not appear to be supported by substantial evidence in the record. Dr.

14  Newell-Eggert opined that plaintiff was very depressed, which affected her employability

15  (Tr. 285).  A clinician at Greater Lakes Mental Health noted plaintiff's report that she had

16  a number of symptoms including sadness, insomnia, weight gain, isolation and decreased

17  motivation and energy due to her depression (Tr. 504).  Dr. Meagher provided treatment

18  for issues involving depression, which is one of the reasons why he concluded she would

19  not be able to return to her previous level of productivity (Tr. 246).

20  Therefore, the ALJ's conclusion that her mental health condition was not a severe

21  impairment is not supported by substantial evidence in the record. Because the ALJ failed

22  to provide any mental health limitations in her RFC, this legal error is not harmless.

**(4)** **Alleged errors regarding plaintiff's carpel tunnel syndrome, the side effects of prescribed medication; plaintiff credibility and the testimony of Dr. Lorber**

Because of the errors already indicated above and this Court's determination that this matter must be remanded, there is no need for this Court to evaluate the remaining issues set forth in plaintiff's complaint as these matters all will need to be reevaluated in light of the above errors already discussed.

**(5)** **Whether or not this Court should exercise its authority to remand the case for immediate payment of benefits, rather than further administrative proceedings**

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record

1    that the ALJ would be required to find the claimant disabled were such
2    evidence credited.

3    *Harman, supra,* 211 F.3d at 1178 (*quoting Smolen, supra,* 80 F.3d at 1292).

4         Here, outstanding issues must be resolved regarding the step two analysis, the

5    medical evidence, and plaintiff's credibility, among other things.  Therefore, remanding

6    for an immediate award of benefits would not be appropriate in this case. . *See Smolen,*

7    *supra*, 80 F.3d at 1292. The decision whether to remand a case for additional evidence or

8    simply to award benefits is within the discretion of the court.  *Swenson v. Sullivan*, 876

9    F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399

10   (9th Cir. 1988)).

11        The ALJ is responsible for determining credibility and resolving ambiguities

12   and conflicts in the medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th

13   Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). If the

14   medical evidence in the record is not conclusive, sole responsibility for resolving

15   conflicting testimony and questions of credibility lies with the ALJ.  *Sample v.*

16   *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d

17   855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir.

18   1980))).

19

20        There are a number of outstanding issues that cannot be resolved by this Court.

21   The ALJ's failure to properly evaluate the medical evidence and properly apply the

22   valuation process makes it necessary to remand this case for further proceedings.

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 19

1

<u>CONCLUSION</u>

2

Based on these reasons and the relevant record, the Court **ORDERS** that this

3

matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

4

405(g) to the Commissioner for further consideration.

5

**JUDGMENT** should be for plaintiff and the case should be closed.

6

Dated this 12th day of December, 2013.

7

8

9

J. Richard Creatura
United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 20